IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In re: | § | Case Number |
| | § | 13-70267-M-11 |
| HEAVENLY HEALTH CARE, LLC, | § | (Chapter 11) |
|     Debtor. | § | |

## DEBTOR'S  COMBINED
## DISCLOSURE & PLAN OF REORGANIZATION

Eduardo V. Rodriguez
MALAISE LAW FIRM
TBN. 00795621
Federal Admissions 19945
1265 North Expressway 83
Brownsville, TX 78521
Tel:  (956) 547-9638
Fax:  (956) 547-9630
Email: evr@malaiselawfirm.com
Attorney In Charge for Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In re: | § | **Case Number** |
| | § | **13-70267-M-11** |
| **HEAVENLY HEALTH CARE, LLC.** | § | (Chapter 11) |
| Debtor. | § | |

## NOTICE OF VOTING AND OBJECTION DEADLINE
## AND NOTICE OF CONFIRMATION HEARING

A copy of a proposed plan, combined with its disclosure statement, is attached.  If you are the holder of a claim that is impaired by the plan, you have the right to vote by the enclosed ballot.  **The deadline for receipt of your ballot is DECEMBER 12, 2013.**  Late ballots will not be counted.

Please read the enclosed plan and disclosure statement in its entirety before you vote.  You may wish to retain your own attorney or accountant to assist you in determining whether to accept or reject the proposed plan.  Neither Heavenly Health Care, LLC. nor its counsel can give you advice on how to vote.

The plan will not be binding on any person unless the United States Bankruptcy Court enters an order confirming the plan.  There are many requirements for confirmation of a plan.  These are contained in § 1129 of the Bankruptcy Code.  One of the requirements is that at least one class of impaired claims votes to accept the plan, by both a two-thirds majority (measured by the dollar amounts of claims that are voted) and a simple majority (measured by the number of persons who vote).  Accordingly, it is important that you return your ballot.  Mailing instructions are contained on the ballot.

You may also file a written objection to confirmation of the plan.  Written objections must be filed with the Clerk of the Bankruptcy Court.  **The deadline to file a written objection is DECEMBER 12, 2013.  A vote rejecting the plan is not the same as an objection to the plan.**

You may also file an objection as to the adequacy of the disclosure statement that is attached.  The disclosure statement is required to contain "adequate information" to allow you to make an informed decision on how to vote on the plan.  If you object to the adequacy of the disclosure statement, you must file a written objection that is received by the Clerk of the Bankruptcy Court not later than  **NOVEMBER 14, 2013.**

The deadline for filing proofs of claims against the Debtor is **October 21, 2013** after which any proof of Claim, including Administrative Claims, filed will not be Allowed, and the later filing of which will have no effect on the distributions provided in this Plan or effect the discharge or res judicata effect of any discharge or injunction provided in this Plan.  No informal filing, nor other document shall constitute a Proof of Claim except as provided in this Plan.

A hearing on whether to confirm the proposed plan has been scheduled for **DECEMBER 19, 2013** at the United States Bankruptcy Court in McAllen, Texas.  The hearing is open to the public.

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| In re: | § | **Case Number** |
| | § | **13-70267-M-11** |
| **HEAVENLY HEALTH CARE LLC,** | § | **(Chapter 11)** |
| Debtor | § | |

## PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT

Heavenly Health Care, LLC ("Debtor") files this Plan of Reorganization and Disclosure Statement. The Debtor is seeking to repay its debts over time pursuant to the terms of their Plan of Reorganization. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on the Debtor and on all creditors and interest holders in this case.

The Debtor represents that everything in this document is true to the best of its knowledge. **READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW:**

- Who can vote or object.

- The treatment of your claim is (*i.e.*, what your claim will receive if the plan is confirmed).

- The history of the Debtor and significant events during the bankruptcy.

- How the court will decide whether to confirm the plan.

- The effect of plan confirmation.

- Whether this plan is feasible.

### 1. Background

The Debtor filed a voluntary petition on June 3, 2013 that commenced this chapter 11 bankruptcy case. The filing of the petition constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code. Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the Bankruptcy Code. The automatic stay prohibits most collection activities against the Debtor and its property. There are certain exceptions set forth in § 362(b) of the Bankruptcy Code.

The first date scheduled for the meeting of creditors under § 341(a) of the Bankruptcy Code was July 23, 2013. The meeting was rescheduled and held and concluded on August 13, 2013.

When the Debtor filed this bankruptcy case, all of its property became property of its bankruptcy estate.  The following bankruptcy cases are related to this bankruptcy case.

| Case Name | Case Number | Date Filed | Nature of Relationship |
|-----------|-------------|------------|------------------------|
| None      |             |            |                        |
|           |             |            |                        |

## 2. Description of Assets

The Debtor filed schedules of all of its assets and liabilities on December 3, 2012.  Complete copies of the schedules are available from the Clerk of the Court.  The primary assets of the bankruptcy estate, their estimated values and associated liens are:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|----------------------|-----------------------------|----------------------------------------------------|-----------------------|---------------------------|----------------------------|
| Real Property | $0.00 | $0.00 | $0.00 | $0.00 | |
| Cash | $10,083.08 | $0.00 | $0.00 | $10,083.08 | Debtor's Bank Accounts |
| Accounts Receivable | $0.00 | $0.00 | $0.00 | $0.00 | Debtor's Books |
| Vehicles | $1,812.89 | $0.00 | $0.00 | $1,812.89 | Debtor's Books |
| F.F. & E. | $44,160.00 | $0.00 | $0.00 | $44,160.00 | Debtor's Books |
| | | | | $ | |
| | | | | 0.00 | |
| | | | | 0.00 | |
| TOTAL | | | | $56,055.97 | |

The Debtor has identified the following lawsuits that may be filed by it.  Mark only those that apply.

_____ Lawsuits to recover fraudulent transfers:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---------------------|------------------------|-----------------|
| None                |                        |                 |
|                     |                        |                 |

_____ Lawsuits to recover preferences:

| Potential Defendant | Date(s) of Transfer(s) | Amount of Claim |
|---------------------|------------------------|-----------------|
| None                |                        |                 |
|                     |                        |                 |

_____ Lawsuits arising under other provisions of the Bankruptcy Code:

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc

| Potential Defendant | Description of claim | Amount of Claim |
|---|---|---|
| None | | |
| | | |

_____   Lawsuits arising under non-bankruptcy law:

| Potential Defendant | Description of claim | Amount of Claim | Describe Whether Debtor Intends to Pursue Lawsuit and, if not, Why |
|---|---|---|---|
| None | | | |
| | | | |

### 3.   Events Leading Up to Bankruptcy

The company has been operating since about 2006, and our revenue is generated by Medicare and Medicaid as we are providers. This industry has been undergoing major changes in the way they calculate their reimbursements. There have been several cuts to Medicare and Medicaid since 2006. Medicare also has been updating their systems and for some reason. Recoupments have been coming in from prior years. These are things that were outside of the company's control. Our patient census has also decreased dramatically in the last year or so, with physician's no longer wanting to  sign home health orders, patient's enrolling in HMO's that are not currently willing to accept new providers, and physicians who are members of the ACO who are discharging patients to help out their own organizations.

Our biggest problem financially, was keeping up with IRS Tax commitments and unfortunately those taxes kept accruing. Back in 2011 is when our agency started really suffering. Unfortunately, in a span of about 3-4 months, our agency lost our Administrator/CEO, our Alternate Administrator, our Director of Nurses, and our Biller. Our Alternate Administrator, Biller, and Director of Nurses had started their own Home Health Agency without our knowledge. Our Biller left from one day to the next, without leaving any passwords for billing purposes. This halted our billing by about a month and a half to two months. After this, our biller had asked for an extension for our Medicare Provider Enrollment Application (which if turned in late, or not turned in at all, causes Medicare to hold all payments), without letting us know. This held our billing for about another 2 months. We were billing, but not getting reimbursed anything from Medicare until this application was received. Our agency about a year and a half ago had about 100 patients in the home health. This past year, our census went as low as about 35 patients. At the moment, we have about 50 patients in the home health, and about 80 patients in our PHC department, which is reimbursed by Medicaid. We currently have about 16 employees from the home health, and about 75 employees from our PHC Department. Our Agency Serves clients from Starr, Hidalgo, Willacy and Cameron Counties. Our Home Health Agency offers skilled nursing for both Adults and Pedicatrics, Physical Therapy, Occupational Therapy, Speech Therapy, Medical Social Worker, Home Health Aide, and Attendant Services for both Adults and Pediatric Patients.

### 4.  Sources of Income

In the last three years, the Debtor's primary sources of income have been:

Income from Operations

| Year | Home Health | Amount of Income |
|---|---|---|
| 2013 – to date | | $1,031,382.0 |
| 2012 | | $1,485,908.0 |
| 2011 | | $1,634,219.0 |

Income from Other

| Year | | Amount of Income |
|---|---|---|
| 2013-to date | None | |
| 2012 | None | |
| 2011 | None | |
| | | |

Income from Operation of Business

| Year | Name and Nature of Business | Amount of Income |
|---|---|---|
| 2013 | None | |
| 2012 | | |
| 2011 | | |
| | | |

### 5.  Description of Reorganization

The Debtor intends to reorganize its finances through a combination of the following:

_X__   Increasing its income.  If this box is marked, complete the following:

Specifically, how does the Debtor intend to increase its income?

The Debtor intends to increase its income by increasing its marketing and sales efforts on an international basis.

The Debtors believes that its income in each of the next five years will be:

| Year | Source | Income |
|---|---|---|

| Year | Source | Income |
|------|--------|--------|
| 2013 | Home Health | $1,600,000.00 |
| 2014 | "        " | $1,740,000.00 |
| 2015 | "        " | $1,800,000.00 |
| 2016 | "        " | $1,855,000.00 |
| 2017 | "        " | $1,910,000.00 |

_____ Surrendering the following collateral to eliminate the obligation to repay secured indebtedness.

| Lender | Description of Collateral | Total Debt secured by Collateral |
|--------|---------------------------|----------------------------------|
| None |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

_____ Reducing its other expenditures, as follows:

| Description of Expenditure | Previously Expenditures (per month) | Forecast Expenditures (per month) | Description of how reduction will be made |
|----------------------------|-------------------------------------|-----------------------------------|-------------------------------------------|
|  |  |  |  |
| None |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

_____ Selling the following assets:

| Description of Asset | Forecast Net Proceeds from Sale | Forecast Date of Sale |
|----------------------|----------------------------------|------------------------|
| None |  |  |
|  |  |  |
|  |  |  |

_____ Other: [Provide Complete Description]

### 6. Classification and Treatment of Claims

The following is the classification and treatment of claims under this plan:

| Class # | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any (See Section 5 for a More Complete Description of any Abandonments) | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 | Total payable in Months 61-end |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | Hidalgo County | Impaired | $783.93 | 12% | Installment Payment | $ 209.26 | $ 209.26 | $ 209.26 | $ 209.26 | $ 209.26 | 0 |
| 2. | La Joya I.S.D. | Impaired | $1,653.84 | 12% | Installment Payment | $ 441.48 | $ 441.48 | $ 441.48 | $ 441.48 | $ 441.48 | 0 |
| 3. | American Honda Finance | Unimpaired | $331.71 | Contract Rate | Installment Payment | $ 88.56 | $ 88.56 | $ 88.56 | $ 88.56 | $ 88.56 | 0 |
| 4. | South Texas I.S.D. | Impaired | $63.22 | 12% | Installment Payment | $ 16.92 | $ 16.92 | $ 16.92 | $ 16.92 | $ 16.92 | 0 |
| 5. | South Texas College | Impaired | $185.13 | 12% | Installment Payment | $ 49.44 | $ 49.44 | $ 49.44 | $ 49.44 | $ 49.44 | 0 |
| 6. | City of Palmview | Impaired | $40.35 | 12% | Installment Payment | $ 10.80 | $ 10.80 | $ 10.80 | $ 10.80 | $ 10.80 | 0 |
| 7. | Texas Workforce Commission | Impaired | $5,367.33 | 3% | Installment Payment | $ 1,432.39 | $ 1,432.39 | $ 1,432.39 | $ 1,432.39 | $ 1,432.39 | 0 |
| 8. | Unsecured | Impaired | $72,186.50 | 3% | Installment | $ 15,565.20 | $ 15,565.20 | $ 15,565.20 | $ 15,565.20 | $ 15,565.20 | 0 |

| Class # | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any (See Section 5 for a More Complete Description of any Abandonments) | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 | Total payable in Months 61-end |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Creditors |  |  |  | Payment |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  | TOTALS |  |  |  |  | $ 17,814.05 | $ 17,814.05 | $ 17,814.05 | $ 17,814.05 | $ 17,814.05 | 0 |

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc

Only holders of claims that are "impaired" have the right to vote to accept or reject the plan. If a claim is not marked as impaired, it will be paid in accordance with the pre-petition contract that governs the claim.  If there is a discrepancy between the payments reflected in the above chart and the pre-petition contract, the pre-petition contract will control.

The forecast claims in this class are the amount of claims that the Debtor believes will ultimately be allowed by the Court.  The following claims either have been made or are expected to be made and are disputed:

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by | Description of Dispute |
|-------|-----------------|-----------------------------------|---------------------------|------------------------|
|       | None            |                                   |                           |                        |
|       |                 |                                   |                           |                        |
|       |                 |                                   |                           |                        |
|       |                 |                                   |                           |                        |
|       |                 |                                   |                           |                        |

The Debtor is not aware of any present disputes over any other claim.  Unless otherwise specified in the following paragraph, payments shall be made monthly, on the first day of each month.

### 7.  Payment of Administrative Claims

Administrative claims are the claims allowed under § 503(b) of the Bankruptcy Code for administration of this bankruptcy case.  These claims will be paid in cash on the Effective Date of the plan, unless a written agreement to the contrary is made with the holder of any such allowed claim.

The Court must approve all professional fees listed in this table.  Professionals must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be required to be paid under this plan.

The following are the estimated administrative claims:

| Claimant | Nature of Claim | Amount Claimed by Claimant | Amount Forecast to be Paid by the Debtor | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 | Total payable in Months 61-end |
|----------|-----------------|----------------------------|------------------------------------------|------------------------------|-------------------------------|-------------------------------|-------------------------------|-------------------------------|--------------------------------|
| Malaise Law Firm | Legal Fees | $10,000.00 | $10,000.00 | $5,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10,000.00 |
| CPA | Accounting Fees | $3,500.00 | $3,500.00 | $3,500.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,500.00 |

| Claimant | Nature of Claim | Amount Claimed by Claimant | Amount Forecast to be Paid by the Debtor | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 | Total payable in Months 61-end |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| Total |  | $13,500.00 | $13,500.00 | $13,500.00 | 0 | 0 | 0 | 0 | $13,500.00 |
|  |  |  |  |  |  |  |  |  |  |

### 8.   Payment of Priority, Unsecured Tax Claims of Governmental Units

Claims held by governmental units of the type described in § 507(a)(8) of the Bankruptcy Code will be paid in full, with interest at an annual rate of 3% (or such other rate as noted below), in equal monthly installments over a period beginning 30 days after the Effective Date of the plan and ending five years after the date of the filing of the petition.  Notwithstanding the foregoing treatment, any holder of a § 507(a)(8) claim may file a written election to be treated on the same basis as any nonpriority unsecured claim.  Any such election must be filed in writing not later than 14 days after entry of the order confirming the plan.

The following claims are in this category:

| Claimant | Nature of Claim | Interest Rate (if other than general interest rate set forth above) | Amount Claimed by Claimant | Amount and nature of any dispute by the Debtor | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 | Total payable in Months 61-end |
|---|---|---|---|---|---|---|---|---|---|---|
| I.R.S. | 940/941 | 3% | $65,929.08 | None | $14,215.91 | $14,215.91 | $14,215.91 | $14,215.91 | $14,215.91 | $  0 |
| Texas Workforce Commission | Pre-petition taxes | 3% | $0.00 | None | $ | $ | $ | $ | $ | $ |
| Texas Workforce Commission (Admin Claim) | Post petition taxes | 3% | $837.18 | None | $     180.48 | $     180.48 | $     180.48 | $     180.48 | $     180.48 | $  0 |
| *Total* |  |  | *$66,766.26* |  | *$14,396.39* | *$14,396.39* | *$14,396.39* | *$14,396.39* | *$14,396.39* | *$  0* |
|  |  |  |  |  |  |  |  |  |  |

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc

## 9. Forecasts

Based on the preceding forecasts of income and expenses and on the provisions of the plan, the Debtor provide these forecasts of their cash flow:

| | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 | Months 61-end |
|---|---|---|---|---|---|---|
| Beginning cash balance | $ 20,000.00 | $ 69,790.00 | $ 97,580.00 | $ 98,370.00 | $ 93,660.00 | $ 90,020.00 |
| | | | | | | |
| Income from Employment | | | | | | |
| Gross Income from operation of business | $1,740,000.00 | $1,800,000.00 | $1,855,000.00 | $1,910,000.00 | $1,960,000.00 | 2,010,000.00 |
| Income from sale of assets | | | | | | |
| Retirement/social security income | | | | | | |
| Domestic support received | | | | | | |
| Rental income | | | | | | |
| Other income | | | | | | |
| TOTAL INCOME | $1,760,000.00 | $1,869,790.00 | $ 1,952,580.00 | $ 2,008,370.00 | $ 2,053,660.00 | 2,100,020.00 |
| | | | | | | |
| Taxes on income | 20,000.00 | 30,000.00 | 56,000.00 | 62,000.00 | 62,000.00 | 61,000.00 |
| Property taxes | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | 6,000.00 |
| Insurance | $ 16,000.00 | $ 16,000.00 | $ 16,000.00 | $ 18,000.00 | $ 18,000.00 | 18,000.00 |
| Household expenses | 35,000.00 | 37,000.00 | 38,800.00 | 40,500.00 | 42,000.00 | 43,500.00 |
| Charitable contributions | | | | | | |
| Business expenses | $ 180,000.00 | $ 195,000.00 | $ 207,000.00 | $ 220,000.00 | $ 228,000.00 | 232,000.00 |
| Transportation expenses | 35,000.00 | 36,000.00 | 37,200.00 | 38,000.00 | 40,000.00 | 40,000.00 |
| Medical and dental | 40,000.00 | 49,000.00 | 53,000.00 | 55,000.00 | 57,000.00 | 59,000.00 |
| Domestic support payments | | | | | | |
| Recreation and entertainment | 6,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 |
| Other expenditures (Salaries & Wages) | $1,320,000.00 | $1,363,000.00 | $1,400,000.00 | $1,435,000.00 | $1,470,000.00 | 1,500,000.00 |
| TOTAL EXPENDITURES | $1,658,000.00 | $ 1,740,000.00 | $ 1,822,000.00 | $1,882,500.00 | $1,931,000.00 | 1,967,500.00 |
| | | | | | | |
| NET CASH FLOW THIS PERIOD | $ 102,000.00 | $ 129,790.00 | $ 130,580.00 | $ 125,870.00 | $ 122,660.00 | 132,520.00 |
| | | | | | | |
| Payments Pursuant to Plan | $ 32,210.00 | $ 32,210.00 | $ 32,210.00 | $ 32,210.00 | $ 32,210.00 | - 0 - |
| Cash Flow this Period after Plan Payments | $ 69,790.00 | $ 97,580.00 | $ 98,370.00 | $ 93,660.00 | $ 90,020.00 | 132,520.00 |

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc

| | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 | Months 61-end |
|---|---|---|---|---|---|---|
| Ending Cash balance | $ 69,790.00 | $ 97,580.00 | $ 98,370.00 | $ 93,660.00 | $ 90,020.00 | 132,520.00 |

Monthly reports have been filed showing actual income and expenses during the period of the bankruptcy case.  These forecasts vary from the monthly reports due to seasonal supply and demand.

### 10. Disposable Income Test

Not applicable.

### 11. Cramdown and Absolute Priority Rule

If a class of creditors does not accept the plan, the Debtor will seek to obtain confirmation through the cramdown provisions of § 1129(b).  This means that the plan must be fair and equitable to the class that does not accept the plan.  The definition of whether the plan is fair and equitable may be found in § 1129(b) of the Bankruptcy Code.

The balance of this section only applies if a class of unsecured claims does not accept the plan.  In that instance, the Debtor seeks confirmation of the plan pursuant to § 1129(b).

### 12.  Liquidation Analysis

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor's assets.

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest.  This treatment satisfies the liquidation test under § 1129(a)(7)(A).  Holders of priority claims are paid in full, with interest.  This also satisfies the requirements of § 1129(a)(7).

Holders of general unsecured claims are forecast to receive a dividend of 100% of their allowed claim.  The Debtor has estimated that its assets, after payment of liens would generate the following amounts in a chapter 7 liquidation:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| Real Property | $0.00 | $0.00 | $0.00 | $0.00 | |
| Cash | $10,083.08 | $0.00 | $0.00 | $10,083.08 | Debtor's Bank Accounts |
| Accounts Receivable | $0.00 | $0.00 | $0.00 | $0.00 | Debtor's Books |
| Vehicles | $1,812.89 | $0.00 | $0.00 | $1,812.89 | Debtor's Books |

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|---|
| F.F. & E. | $44,160.00 | $0.00 | $0.00 | $44,160.00 | Debtor's Books |
| | | | | $ | |
| | | | | 0.00 | |
| | | | | 0.00 | |
| TOTAL | | | | $56,055.97 | |

In a chapter 7 liquidation, the estimated liquidation value of $698,152.60 would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims.  This would produce the following:

| | |
|---|---|
| Liquidation Value | $56,055.97 |
| Estimated Trustee's Fees and expenses | $2,242.24 |
| Estimated priority claims | $107,081.99 |
| Total available for holders of unsecured claims | $0.00 |
| Estimated unsecured claims | $145,379.33 |
| Estimated percentage recovery in liquidation | 100% |

Because the plan forecasts to pay holders of unsecured claims 100% of the amount of their claims and a chapter 7 liquidation is forecast to pay 100% this plan satisfies the liquidation test as to holders of unsecured claims.

### 13. Payment - Prepayment

Any claim may be prepaid at any time, without penalty.  Interest as provided in this plan must be paid through the date of prepayment.  Distributions under the plan shall commence on the first of the month, following one full month after the Effective date.  Effective Date shall mean the Fifteenth (15th) day following the day of the entry of the Order confirming plan.

### 14.  Tax Issues

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes.  For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss.  This will depend on the holder's own tax characteristics and cannot be assured.  Conversely, if

the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the plan on you.

The Debtor may also have a federal income tax effect from the plan.  To the extent that indebtedness is discharged, the Debtor may have a basis adjustment in its assets.  Moreover, any sale of assets may produce taxable income.  The forecasts set forth above incorporate the Debtor's best estimate of the federal income tax effect of the plan.

## 15. Executory Contracts and Leases

Except for the assumed contracts and leases listed in the following chart, all executory leases and contracts are rejected as of the Effective Date.  Proofs of claim for damages arising from the rejection of an executory lease or contract must be filed not later than 30 days after the Effective Date.  Claims filed after that date will not be paid.

| Contracting Party | Description of Contract | Amount Required to Cure Any Default |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

The amount shown under "Amount Required to Cure Any Default" will be paid not later than 30 days after the Effective Date of the Plan.

If you are the Contracting Party on an assumed contract and disagree with the cure amounts shown, you must file an objection prior to the objection deadline of December 12, 2013. If you do not file an objection prior to the objection deadline, the Court may confirm the plan and you will be bound by the terms of the confirmed plan as to the cure amount.

## 16. Claims Objections

Claims objections must be filed not later than 30 days after entry of the order confirming the plan.  This deadline may be extended by the Court, on motion by a party in interest.  Any such motion must be filed not later than 30 days after entry of the order confirming the plan.

## 17. Additional Provisions

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc

### _City of Palmview, South Texas College, South Texas I.S.D.,_

City of Palmview, South Texas College, South Texas I.S.D shall have an Allowed Secured Claim in the amount as set forth in its proof of claim plus accrued interest, for property taxes due on the various account numbers attached to their Proof of Claim. Taxes for pre-petition years shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said claims, plus statutory interest, are paid in full. The pre-petition taxes, plus accrued statutory interest as herein provided, shall be amortized and paid in equal monthly installments over a period of sixty (60) months with payments commencing on the first of the month, following one full month after the Effective date. Effective Date shall mean the Fifteenth (15th) day following the day of the entry of the Order confirming plan.

To the extent City of Palmview, South Texas College, South Texas I.S.D taxes herein provided, or any Post-Effective Date taxes for the 2013 or following tax years are not timely paid, City of Palmview, South Texas College, South Texas I.S.D shall be entitled to pursue collection through state court procedures for all taxes, penalties and interest due for all tax years, without further notice or order of the Bankruptcy Court. City of Palmview, South Texas College, South Texas I.S.D shall retain all liens until the allowed claims are paid in full.

> All payments are to be mailed to:
> Diane Wade Sanders
> LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
> 2700 Via Fortuna, Suite 400 (78746)
> P. O. BOX 17428
> AUSTIN, TX 78760-7428

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment to City of Palmview, South Texas College, South Texas I.S.D. If "Plan Default" occurs City of Palmview, South Texas College, South Texas I.S.D shall send written notice of default to Debtor's address listed in the bankruptcy petition with a copy to debtors' attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. City of Palmview, South Texas College, South Texas I.S.D are only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and City of Palmview, South Texas College, South Texas I.S.D. may then proceed with state law remedies for collection of all amounts due under state law.

### _Hidalgo County, La Joya ISD,_

Hidalgo County & La Joya ISD shall have an Allowed Secured Claim in the amount as set forth in its proof of claim plus accrued interest, for property taxes due on the various account numbers attached to their Proof of Claim. Taxes for pre-petition years shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said claims, plus statutory interest, are paid in full. The pre-petition taxes, plus accrued statutory interest as herein provided, shall be amortized and paid in equal monthly installments over a period of sixty (60) months with

payments commencing on the first of the month, following one full month after the Effective date. Effective Date shall mean the Fifteenth (15th) day following the day of the entry of the Order confirming plan.

To the extent Hidalgo County & La Joya ISD taxes herein provided, or any Post-Effective Date taxes for the 2013 or following tax years are not timely paid, Hidalgo County & La Joya ISD shall be entitled to pursue collection through state court procedures for all taxes, penalties and interest due for all tax years, without further notice or order of the Bankruptcy Court. Hidalgo County & La Joya ISD hall retain all liens until the allowed claims are paid in full.

All payments are to be mailed to:
John T Banks
Perdue Brandon et al
3301 Northland Drive, Suite 505
Austin, TX 78731

Default under the plan ("Plan Default") shall occur if Debtor fails to make a required monthly payment to Hidalgo County & La Joya ISD. If "Plan Default" occurs  Hidalgo County & La Joya ISD shall send written notice of default to Debtor's address listed in the bankruptcy petition with a copy to debtors' attorney. If the Debtor fails to cure the Plan Default within twenty (20) days of the date that notice was sent, it is a Final Default under this Order. Hidalgo County & La Joya ISD are only required to send two notices of Plan Default, with opportunity to cure. If there is a third Plan Default after two (2) cures, it is a Final Default and no further notice of an opportunity to cure must be given, and Hidalgo County & La Joya ISD. may then proceed with state law remedies for collection of all amounts due under state law.


### *Internal Revenue Service*


This claim consists of the Allowed Claim of the Internal Revenue Service ( $83,983.38 ) is composed of the following: (i) Secured $8,400.83 which includes tax in the amount of $364.64; interest in the amount of $467.33; penalty in the amount of $7,586.86 (ii) Priority in the amount of $65,115.11 which includes tax and interest and; (iii) Unsecured in the amount of $ 10,467.44for a total allowed claim in the amount of $83,983.38.

Pursuant to an agreement reached by the Debtor and the IRS, the total claim of $83,983.38 which includes penalty in the total amount of $18,054.30 will be reduced to $65,929.08.  As such, the agreed claim is $65,929.08, less payments made post-petition, with an interest rate of 3% to be paid over a period of sixty (60) months commencing with a first payment of $1,184.56 due on January 1, 2014 and thereafter on the 15th of each month in the amount of $1,184.56 until fully paid.  Nonetheless, should the Debtor be unsuccessful in repaying the IRS in full, pursuant to this Plan, the pre-petition penalties and interest will be added back to the IRS's claim. Additionally, the IRS shall retain its pre-petition lien.

Payments shall be mailed to:

Keri Templeton
c/o Internal Revenue Service
300 E 8th St. Stop 5026 AUS
Austin, Texas 78701

The debt owed by the debtor to the I.R.S. is a nondischargeable debt, except as otherwise provided for in the Code, and if the debtor should default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default. A failure by the debtor to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the thirtieth (30th) day of each month; if there is default to the IRS, the IRS must send written demand for payment to the debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the debtor can receive up to five (5) notices of default from the IRS, the fifth (5th) default cannot be cured and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority and unsecured general.

The IRS is bound by provisions of the confirmed Plan and is barred under 11 U.S.C. §1141 from taking any collection action against the debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the Agreed Order in this case and this Confirmation Order. Provided, however, that debtor's failure to make a timely tax deposit as required by law may be cured by debtor making the next succeeding required deposit, but such deposit must include both the current amount due, as well as the amount previously due but not paid. Any failure by debtor to make this next succeeding deposit for the total amount due shall be deemed a final default that will allow the IRS to pursue collection activities immediately without further order of this Court.

Default for which debtor shall receive notice and opportunity to cure - the following event of default may be cured by the debtor as follows:   A failure by the debtor to make a payment to the IRS pursuant to the terms of the Confirmed Plan on file in this case (except as to debtor's ongoing tax obligations) or of its bankruptcy plan shall be an event of default if payment is not received by the thirtieth (30th) day of each month. If there is such a default as to the IRS, the IRS must send written

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc

demand for payment to the debtor at **the address listed in the bankruptcy petition** and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the debtor can receive up to five (5) notices of default from the IRS, but the fifth (5th) default cannot be cured.

IRS remedies upon default: Upon any final and non-curable default by debtor, IRS may accelerate its allowed pre and post petition claims, and any future administrative claims, and declare the outstanding amount of such claims to be immediately due and owing and pursue any and all available state and federal rights and remedies as provided by law without further order of this Court." **The Internal Revenue Service stipulates and agrees that it will not proceed with any collection action against third parties so long as the Debtor does not default under the terms of this Plan.**

## 18. Discharge, Vesting and Effective Date

Confirmation of the Plan shall discharge and fully satisfy, pursuant to and so provided by 11 U.S.C. § 1141(d) of the Bankruptcy Code, and as provided contractually pursuant to the terms of the Plan, all Debts, liabilities, and obligations of the Debtor (including all penalties, fines or forfeitures, and damages) that arose before the Confirmation Date, except as otherwise specifically provided in the Plan or the Order Confirming Plan, whether or not such Claim is Allowed or paid pursuant to this Plan.  Upon Confirmation, the Plan shall Discharge all Debts (as defined in 11 U.S.C. § 101) and all Claims against, and liabilities of, the Debtor which are Dischargeable by Debtor in a case under 11 U.S.C. §101, et seq. by statute or by law applicable to Title 11, U.S.C., and in a Chapter 11 Case, or by contract with a Creditor.  All Creditors and Persons will continue to be stayed and enjoined from proceeding against the Debtor and their assets pursuant to 11 U.S.C.§ 524.

**IT IS THE INTENTION OF THIS PLAN THAT ONCE CONFIRMATION OCCURS, THE DEBTOR WILL BE FULLY, FINALLY, AND COMPLETELY DISCHARGED FROM ALL LIABILITIES INCLUDING CLAIMS AND DEBTS AND SHALL BE REVESTED WITH ALL PROPERTY OF THE ESTATE AS HEREIN PROVIDED.**

Upon Confirmation, title to all exempt assets of the Debtor shall be retained by and revested in the Debtor, free and clear of all claims, liens, security and equitable interests, except as specifically set forth in this Plan.  The Order Confirming Plan shall be a judicial determination of, and a contract for, the discharge of the liabilities of and Claims against the Debtor.

This Effective Date of this plan is the 15th day after entry of the order confirming the plan, unless the confirmation order is stayed.  If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay.  No party may act pursuant to this plan prior to the Effective Date.

## 19. Obligations to United States Trustee

The Debtor will be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Any fees due as of the date of confirmation will be paid on the Effective Date.  After confirmation, the Debtor will continue to file timely financial reports in the format required by the United States Trustee and continue to pay quarterly fees as accrued until the case is closed, converted to a case under chapter 7, or dismissed.

## 20. Default

Unless stated elsewhere in this Plan, if there is a default in payment to a creditor under this plan, the default must be cured within 20 days of written notice sent to the Debtor by the affected creditor.  If the default is not cured within the 20-day period, the creditor may seek any rights available under the Bankruptcy Code or under applicable non-bankruptcy law.

## 21.  Injunction

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor, the Estate, properties of the Estate or proceeds of said property are, with respect to any such Claims, specifically permanently enjoined and restrained from commencing, conducting or continuing any action or proceeding against the Debtor upon such Claims, including, but not limited to (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation) any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons based upon such Claims; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

## 22. Release Upon Payment and Discharge

All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts, and liabilities of any nature

whatsoever against the Debtor or any of its assets or properties effective on the Effective Date. Except as may be otherwise provided herein, at the Discharge Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, their assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.

### 23.    Releases

Upon entry of a Discharge Order, all creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the promises and obligations of the Debtor under the Plan, shall be deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against the Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Discharge Order.

### 24.    Exculpations

To the fullest extent permissible under all applicable law, the Debtor and its current officers, directors, members, managers, agents, representatives, if any, for same shall neither have nor incur any liability to any entity including, specifically, any holder of a Claim or Interest for any act taken or admitted to be taken in connection with or related to the prosecution of this Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation or consummation of any Plan, any Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Chapter 11 Case, any settlement agreement, purchase offer (whether accepted or rejected), any Plan, any Disclosure Statement, or the Confirmation Order, including solicitation of acceptance of any Plan.  No portion of such exculpation shall apply to any officer, director, or employee of the Debtor, or their representatives, that held any such position prior to date of the order for relief**.**

### 25.  Subordinated Claims

Creditors whose Claims are subordinated: (I) in accordance with 11 U.S.C. §510 or §1129(b) by Final Order; or (ii) pursuant to this Plan consists of claims or interests which have been excluded from participation in the distributions to be made to holders of Unsecured Claims because they are Insiders as that term is defined by the Bankruptcy Code. The members of this Class are Catherine & Michael Pavon. These claims will not receive dividends or distributions from the Debtor until the claims of all Creditors that are subject to this Plan who are of a higher priority are satisfied in full pursuant to the terms of the Plan, except to the extent property management or similar fees are specified by the plan.

## 26. Jurisdiction Of The Court

The Court will retain jurisdiction until this plan is fully consummated including but not limited to the following purposes:

The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to creditor's claims for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to objection to, or re-examine the claim in whole or in part.

Determination of parties' claims as secured or unsecured, including valuation hearings under §506 of the Bankruptcy Code.

Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provision of Title 11 of the United States Code or the determination of tax liabilities under §505 of the Bankruptcy Code.

The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this plan or the order of confirmation as may be necessary to carry out the purpose and intent of this plan.

The modification of this plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

To enforce and interpret the terms and conditions of this plan.

Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights, and powers as the court may deem proper.

## 27. Conclusion

Heavenly Health Care LLC. has filed this plan and disclosure statement.  It represents that it believes the information contained in this document to be true and correct in all respects.

Dated:     October 7, 2013


_/s/ Valente Alaniz, Jr._
Valente Alaniz, Jr, President

Submitted through its counsel:

Eduardo V. Rodriguez
Malaise Law Firm
1265 N. Expressway 83
Brownsville, Texas 78520
Phone: 956-547-9638
Fax: 956-547-9630

Heavenly Health Care, LLC
K:\251\251954\hhc organizational plan 2 10022013.doc